UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANDREANEA JONES,

    Plaintiff,

v.                                              Case No. 8:20-cv-1903-AEP

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

    Defendant.
_____/

**ORDER**

Plaintiff seeks judicial review of the cessation of her disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

**I.**

**A.    Procedural Background**

Plaintiff previously filed an application for a period of disability, DIB, and SSI and received a favorable decision, with the ALJ finding Plaintiff disabled since January 1, 2010 and awarding benefits (Tr. 59-68). The Social Security Administration ("SSA") revisited Plaintiff's disability status and concluded that

---

[1] Dr. Kilolo Kijakazi is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Commissioner Kilolo Kijakazi should be substituted for Commissioner Andrew M. Saul as the defendant in this matter. No further action needs to be taken to continue this matter by reason of the last sentence of section 205(g) of the Social Security Act. 42 U.S.C. § 405(g).

Plaintiff was no longer disabled as of October 1, 2017 (Tr. 71-113). The cessation determination was upheld upon reconsideration following a hearing with a State Agency Disability Hearing Officer (Tr. 116-17, 121-37). Thereafter, Plaintiff requested an administrative hearing (Tr. 154-58). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 29-58). Following the hearing, the ALJ issued an unfavorable decision denying Plaintiff continuing benefits (Tr. 12-28). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-6, 216-23). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

### B. Factual Background and the ALJ's Decision

In rendering the first administrative decision finding Plaintiff disabled, the prior ALJ concluded that Plaintiff's date last insured was June 30, 2014 and that Plaintiff had not engaged in substantial gainful activity since January 1, 2010, the alleged disability onset date (Tr. 65). After conducting a hearing and reviewing the evidence of record, the prior ALJ determined Plaintiff had the following severe impairment: lumbar disc disease with radiculopathy (Tr. 65). Notwithstanding the noted impairments, the prior ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 65). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform sedentary work, except that Plaintiff could sit and stand for five minutes

in an eight-hour workday and walk for three minutes in an eight-hour workday (Tr. 65). Considering Plaintiff's noted impairments limitations, the ALJ determined that Plaintiff could not perform her past relevant work (Tr. 66). On September 9, 2011, the ALJ found that, given Plaintiff's age, education, work experience, and RFC, Plaintiff was incapable of performing any jobs and accordingly concluded that Plaintiff had been under a disability since January 1, 2010 (Tr. 66-68).

Subsequently, the SSA revisited Plaintiff's disability status and concluded that Plaintiff was no longer disabled as of October 1, 2017 (Tr. 71-113). As the most recent favorable decision was the September 9, 2011 decision by the prior ALJ, that decision was considered the "comparison point decision" or CPD (Tr. 17). After summarizing the findings from the CPD, the ALJ determined that Plaintiff had not engaged in substantial gainful activity through the date of the decision, or August 30, 2019 (Tr. 17). The ALJ then found that the medical evidence established that, since October 1, 2017, Plaintiff had the following medically determinable impairments: degenerative disc disease of the lumbar spine, hypertension, obesity, ovarian cyst, polycystic ovaries, and menstrual disorder (Tr. 17). Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 17).

According to the ALJ, medical improvement occurred on October 1, 2017, at which time the impairment present at the time of the CPD had decreased in medical severity to the point where Plaintiff retained the RFC to lift and/or carry

20 pounds occasionally and 10 pounds frequently; stand and/or walk for six hours in an eight-hour workday; sit for six hours in an eight-hour workday; could frequently climb ramps and stairs; could occasionally climb ladders, ropes, and scaffolds; and needed to avoid concentrated exposure to hazards (Tr. 18). The ALJ did not consider the limiting effects of the impairments that Plaintiff developed after the CPD in setting forth the RFC but rather, based on the impairments present since the CPD, concluded that the RFC Plaintiff retained since October 1, 2017 was less restrictive than the RFC Plaintiff had at the time of the CPD (Tr. 18). The ALJ noted that such medical improvement was related to the ability to work because it resulted in an increase in Plaintiff's RFC (Tr. 18).

The ALJ then found that, since October 1, 2017, Plaintiff continued to have a severe impairment or combination of impairments, and based on the current impairments, Plaintiff retained the foregoing RFC (Tr. 18-19). The ALJ indicated that Plaintiff had no past relevant work experience, was a younger individual aged 18-49, had obtained at least a high school education, and transferability of skills was not an issue given the lack of past relevant work experience (Tr. 21). Based on Plaintiff's age, education, work experience, and RFC relating to her current impairments, the ALJ determined that Plaintiff maintained the ability to perform a significant number of jobs in the national economy, including work as a laundry attendant, a gate attendant, and an office helper (Tr. 21-22). Accordingly, the ALJ concluded that Plaintiff's disability ended on October 1, 2017 and that Plaintiff had not become disabled again since that date (Tr. 22-23).

## II.

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration ("SSA"), to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.[2]  The regulations also establish a sequential evaluation process to determine whether a claimant's disability continues or ends.  20 C.F.R. §§ 404.1594(f), 416.994(b)(5). Under this process, the SSA must determine, in sequence, the following:

> (1)  Whether the claimant is engaging in substantial gainful activity (SGA).[3] If the claimant is engaging in substantial gainful activity, the SSA will find disability to have ended;

---

[2]  The cited references to the regulations pertain to those in effect at the time the decision was rendered.
[3]  SGA means work that (1) involves doing significant and productive physical or mental duties; and (2) is done (or intended) for pay or profit.  20 C.F.R. §§ 404.1510, 416.910.

(2) If the claimant is not engaging in SGA, whether the claimant has an impairment or combination of impairments which meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the claimant does have such impairment, the claimant's disability will be found to continue;

(3) If the claimant does not have such impairment or combination of impairments, whether there has been medical improvement, as shown by a decrease in medical severity.[4] If there has been medical improvement, the analysis proceeds to step four. If there has been no decrease in medical severity, no medical improvement has occurred, and the analysis proceeds to step five;

(4) If the claimant experienced medical improvement, whether such medical improvement is related to the claimant's ability to perform work, *i.e.*, whether or not there has been an increase in the RFC based on the impairment(s) that was present at the time of the most recent favorable medical determination. If medical improvement is not related to the claimant's ability to work, the analysis proceeds to step five, but, if medical improvement is related to the ability to work, the analysis proceeds to step six;

(5) If the SSA found at step three that no medical improvement occurred or if the SSA found at step four that medical improvement is not related to the claimant's ability to work, whether any of the exceptions in 20 C.F.R. § 404.1594(d) and (e) apply. If none apply, the disability will be found to continue. If one of the first group of exceptions to medical improvement applies, the analysis proceeds to step six. If an exception from the second group of exceptions to medical improvement applies, the claimant's disability will be found to have ended. The second group of exceptions to medical improvement may be considered at any point in the process;

(6) If medical improvement is shown to be related to the claimant's ability to do work or if one of the first group of exceptions to medical improvement applies, the SSA will determine whether all the claimant's current impairments in combination are severe. The SSA will consider all the claimant's current impairments and the impact of the combination of those impairments on the claimant's ability to function. If the RFC in step four shows significant limitation of the

---

[4] Medical improvement means any decrease in the medical severity of the claimant's impairment(s) which was present at the time of the most recent favorable medical decision that the claimant was disabled or continued to be disabled. 20 C.F.R. § 404.1594(b)(1), 416.994(b)(1)(i).

claimant's ability to perform basic work activities, the analysis proceeds to step seven. When the evidence shows that all of the claimant's current impairments in combination do not significantly limit his or her physical or mental abilities to perform basic work activities, the impairments will not be considered severe in nature, and, if so, the claimant will no longer be considered to be disabled;

(7) If a severe impairment exists, whether the claimant can perform SGA. At this step, the SSA assesses the RFC based on all of the claimant's current impairments and considers whether the claimant can still do work he or she performed in the past. If he or she can perform such work, disability will be found to have ended; and

(8) If unable to perform past relevant work, whether the claimant can perform other work given the RFC and the claimant's age, education, and past work experience.[5] If the claimant can perform other work, the SSA will find that disability has ended. If the claimant cannot perform other work, the SSA will find that disability continues.

20 C.F.R. § 404.1594(f)(1)-(8); *see also* 20 C.F.R. § 416.994(b)(5)(i)-(viii) (outlining the substantially similar process for determining continuing disability for SSI, except for the first step regarding performance of SGA).

Essentially, "[a]n ALJ may terminate a claimant's benefits if there is substantial evidence that there has been medical improvement in the claimant's impairments related to his ability to work, and the claimant is now able to engage in substantial gainful activity." *Klaes v. Comm'r, Soc. Sec. Admin.*, 499 F. App'x 895,

---

[5] An exception exists where the evidence in the claimant's file about his or her past relevant work is insufficient for the SSA to make a finding at step seven about whether the claimant can perform past relevant work. 20 C.F.R. §§ 404.1594(f)(9), 416.994(b)(5)(viii). If the SSA finds that the claimant can adjust to other work based solely on his or her age, education, and RFC, the SSA will find that the claimant is no longer disabled, and the SSA will not make a finding about whether the claimant can perform past relevant work. 20 C.F.R. §§ 404.1594(f)(9), 416.994(b)(5)(viii). If the SSA finds that the claimant may be unable to adjust to other work or that either 20 C.F.R. § 404.1562 or 20 C.F.R. § 416.962 may apply, the SSA will assess the claim under step seven under the DIB framework and step six under the SSI framework and make a finding about whether the claimant can perform past relevant work. 20 C.F.R. § 404.1594(f)(9); *see also* 20 C.F.R. § 404.1594(f)(9), 416.994(b)(5)(viii).

896 (11th Cir. 2012) (*per curiam*) (citations omitted);[6] 42 U.S.C. § 423(f)(1); *see* 20 C.F.R. §§ 404.1594(a), 416.994(b).  As noted above, medical improvement means any decrease in the medical severity of the claimant's impairment(s) which was present at the time of the most recent favorable medical decision that the claimant was disabled or continued to be disabled.   20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1)(i).  The conclusion that a decrease in medical severity exists must be based upon improvements in a claimant's symptoms, signs, or laboratory findings associated with the claimant's impairment(s).   20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1)(i).  To determine medical improvement, therefore, a comparison of prior and current medical evidence must indicate that improvements occurred in the symptoms, signs, or laboratory findings associated with the claimant's impairment(s).   20 C.F.R. §§ 404.1594(c)(1), 416.994(b)(2)(i).   Indeed, "a comparison of the original medical evidence and the new medical evidence is necessary to make a finding of improvement."  *Freeman v. Heckler*, 739 F.2d 565, 566 (11th Cir. 1984) (*per curiam*) (citing *Vaughn v. Heckler*, 727 F.2d 1040, 1043 (11th Cir. 1984)).   Without such comparison, no adequate finding of medical improvement can occur.  *Vaughn*, 727 F.2d at 1043.  The failure to make such comparison requires reversal and remand for application of the proper legal standard.  *Id.*; *see Klaes*, 499 F. App'x at 896 (citing *Vaughn* and noting that, if the ALJ fails to evaluate the prior medical evidence and make the comparison to the

---

[6] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority.  11th Cir. R. 36-2.

new medical evidence, courts must reverse and remand for application of the proper legal standard).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

## III.

Plaintiff argues that the ALJ erred by failing to provide substantial evidence for the finding that Plaintiff achieved medical improvement. Namely, Plaintiff contends that the ALJ failed to compare the medical evidence in the original claims file at the time of the issuance of the CPD to the medical evidence created since the CPD. To that end, Plaintiff attaches the following as exhibits to the Joint Memorandum: (1) copies of records Plaintiff asserts constitute some of the prior medical records considered in rendering the CPD (Doc. 22-2), and (2) a copy of the Exhibit List from the prior administrative proceedings relating to the CPD (Doc. 22-1). For the following reasons, Plaintiff's argument fails.

Initially, the attachments Plaintiff provided with the Joint Memorandum do not support her position. First, review of the medical records provided by Plaintiff reveals that they all post-date the CPD and therefore cannot constitute any part of the medical record considered by the prior ALJ (Doc. 22-2). Second, the Exhibit List simply identifies five distinct medical records that the prior ALJ purportedly considered in rendering the CPD, totaling 43 pages, with one record consisting of a one-page document noting that no medical records were available from a particular medical source (Doc. 22-1, at 2). The only medical evidence cited by the prior ALJ in support of his disability finding consisted of a 2009 MRI of the lumbar spine, a 2010 nerve conduction study, and a 2011 MRI of the lumbar spine (Tr. 63-68). During the administrative hearing on the cessation decision, Plaintiff's counsel indicated and the ALJ agreed that the 2010 nerve conduction study was not in the

original main file or the exhibit file (Tr. 33-34).

Notably, however, included within the prior medical records were diagnostic records from Tower Diagnostics. In the decision, the ALJ explicitly considered records from Tower Diagnostics, including reference to and comparison of the prior diagnostic imaging results to the more current diagnostic imaging results (Tr. 18, 20, 326-40, 349). Given that the sparse medical evidence cited by the prior ALJ consisted of a 2009 MRI of the lumbar spine, a 2010 nerve conduction study, and a 2011 MRI of the lumbar spine (Tr. 63-68), and the nerve conduction study did not appear in the original file, the ALJ properly compared the more recent diagnostic imaging results to the prior MRI results in finding improvement in Plaintiff's degenerative disc disease (Tr. 18, 20). The ALJ also properly compared Plaintiff's lack of complaints regarding radiculopathy to Plaintiff's prior complaints of radiculopathy in finding that the evidence no longer established it as an impairment, as Plaintiff denied radicular symptoms during her current consultative examination and because the medical record subsequent to the CPD was devoid of any objective findings reasonably supporting such diagnosis (Tr. 17, 374-75).

Beyond that, the ALJ provided substantial evidence regarding Plaintiff's medical improvement and ability to work. As the ALJ discussed, a 2015 X-ray of Plaintiff's lumbar spine showed no fractures or significant space narrowing or any other acute findings (Tr. 20, 326). A 2017 X-ray similarly indicated normal lumbar alignment with no evidence of fracture or subluxation, vertebral bodies were normal in height, intervertebral disc spaces were well maintained, no spondylolisthesis was

evident, and there appeared only an incidental partial sacralization of the transverse processes at L-5 (Tr. 20, 349). At a consultative examination in 2017, Plaintiff complained of constant back pain but admitted that she did not experience radicular symptoms, had not gone to pain management in three years, and could sit, stand, or walk for fifteen to twenty minutes, which collectively demonstrated Plaintiff's medical improvement from the restrictions set forth in the prior highly restrictive RFC and which the ALJ squarely addressed during the administrative hearing and in the decision (Tr. 20, 35-37, 65, 374). As the ALJ additionally noted, during the same consultative examination, Plaintiff presented with no gross deformity, joint tenderness, or discomfort with motion as to her upper or lower extremities; normal gross and fine finger dexterity; normal bilateral grip; no pitting edema; intact light touch sensation; normal strength at the elbows and knees; normal gait without the use of an assistive device; normal Romberg test and tandem gait; and an ability to walk on heels and toes (Tr. 20, 375).

The ALJ acknowledged that Plaintiff experienced some tenderness and reduced range of motion during the relevant period but otherwise demonstrated normal examinations, including a normal gait (Tr. 20-21, 344-45, 353-54, 358, 361-62, 365-66, 389-90). He also considered the opinions from the state agency medical consultants, who concluded that Plaintiff retained the ability to perform either a reduced range of light work or light work, although he adjusted the latter to account for non-exertional limitations due to Plaintiff's decreased range of motion in her lumbar spine and her obesity (Tr. 21, 75-83, 89-97, 380-87). Most importantly, the

ALJ highlighted the lack of evidence of orthopedic and/or pain management treatment after issuance of the CPD in September 2011 and prior to the cessation of her benefits and insurance coverage in October 2017 as indicative of the fact that Plaintiff's back impairment was not disabling or as limiting as alleged (Tr. 20).

Based on the foregoing, the ALJ properly considered both the prior medical evidence and the current medical evidence in correctly concluding that Plaintiff reached medical improvement since the CPD and thus was no longer disabled. In doing so, the ALJ applied apply the correct legal standards, and the ALJ's decision is supported by substantial evidence.

## IV.

Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is AFFIRMED.

2. The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 22nd day of March, 2022.

ANTHONY E. PORCELLI
United States Magistrate Judge

cc: Counsel of Record